UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,


      --against--                         10 Cr. 726  (RWS)


RYAN LEAKE,

               Defendant.
-------------------------------------------------------------------X



## MEMORANDUM IN AID OF SENTENCING
## ON BEHALF OF
## RYAN LEAKE




Ronald P. Fischetti, Esq.
**FISCHETTI & MALGIERI LLP**
**747 Third Avenue**
**20th floor**
**New York, New York 10017**
**212-593-7100**
**212-758-2809 fax**
*www.fischettilaw.com*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT........................................................................1

II.   DISCUSSION....................................................................................................2

      A.  LEGAL STANDARD..............................................................................2

      B.  THE PRE-SENTENCE REPORT'S
          RECOMMENDED GUIDELINES.......................................................4

      C.  THE OFFENSE CONDUCT....................................................................4

      D.  LEAKE'S HISTORY AND
          CHARACTERISTICS............................................................................7

III.  CONCLUSION................................................................................................14

# I.

## PRELIMINARY STATEMENT

An Eagle Scout from the age of 15, a dedicated search and rescuer, high school graduate with a 3.8 GPA and otherwise beloved member of the small community he grew up in outside of Seattle Washington, Ryan Leake ("Ryan") is an otherwise exemplary individual who lost his way when he started living on his own in Los Angeles.

Prior to his relocation to Los Angeles, Ryan lived a law abiding life. His re-connection with a college friend who enticed Ryan with the promise of making quick easy money led to his downfall. Ryan's mounting debt caused him to try to take the easy way out.

We do not minimize the seriousness of the offenses to which Ryan has pleaded guilty and for which he has accepted full responsibility. Rather, as discussed below, there are numerous factors which should be considered before determining the appropriate sentence including sentencing factors reflected in 18 U.S.C. §3553(a).

As demonstrated herein, as an Eagle Scout and dedicated member of various search and rescue operations, Ryan provided nothing short of "substantial assistance" to the community he grew up in. Following his relocation to Los Angeles, Ryan fell into trouble and ultimately engaged in the instant offense conduct. ███████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████

It's fair to say that his life both before and after his offense conduct is commendable and worthy of recognition in the form of leniency. As such, we respectfully urge the Court to impose a sentence of time served upon Ryan who had been in custody for the past 29 months.

1

\*\*\*

A Judge's responsibility when sentencing a defendant is undoubtedly a difficult task. As this Court is surely aware, there are a variety of factors which the Court must consider in determining the appropriate sentence is not simply the offense of conviction, but the history and characteristics of the defendant as well.  For this reason we have attached as exhibits a host of letters from Ryan's family, friends and community, and certificates he has received while incarcerated, which provide valuable insight into who Ryan is, which we submit should not be overshadowed by his lapse of reason which underlies his offense conduct.

## II.

## <u>DISCUSSION</u>

### A.  LEGAL STANDARD

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the guideline range, as well as any basis to depart from that range. However, the Court is no longer required to impose a sentence within that range. In fact, the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 128 S.Ct. 554, 574 (2007). The guidelines are only the "starting point and initial benchmark…" *Id., citing Gall v. United States*, 128 S.Ct. 586, 596 (2007).  It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the §3553(a) factors. *Id., Kimbrough*, 128 S.Ct. at 574, *citing Gall*, 128 S.Ct. at 597.

2

In determining a sentence that is sufficient, but not greater than necessary, the first of those factors the judge must consider is the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553 (a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those characteristics, along with the remaining seven factors,[1] may render sentences that do not fit within the guidelines, yet are fair and meet the goals of sentencing set forth in §3553 (a)(2).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall,* at 597. Rather, the Court must make an individualized assessment based on the facts presented. From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ." *Kimbrough,* 128 S.Ct. at 570, *citing* 18 U.S.C. §3553(a). The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense", "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall,* a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall,* 128 S.Ct. at 599; *see also Rita v. United States,* 127 S.Ct. 2456, 2465 (2007) (observing

---

[1]  The seven other factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the offender; (3) the need for the sentence imposed to reflect the goals of sentencing set forth in § 3553(a)(2); (4) the kinds of sentences available; (5) the Commission's policy statements; (6) the need to avoid unwarranted sentence disparities among similar defendants who commit similar crimes; and (7) the need to provide restitution to victims. *See* 18 U.S.C. §3553 (a).

3

that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

### B.   THE PRESENTENCE REPORT'S RECOMMENDED GUIDELINES

On May 9, 2011 the defendant pleaded guilty to a Superseding Information. Specifically, Ryan pleaded guilty to conspiracy to distribute 1,000 kilograms of marijuana in violation of 21 U.S.C. 841(b)(1)(A) (Count One);   and producing false identification documents to facilitate the commission of a drug trafficking crime in violation of 18 U.S.C. §1028(a)(1), (b)(1) and (b)(3) (Count Two).   Counts 1 and 2 are grouped together because the offense level is determined on the basis of the total drug amount.   Pursuant to §2D1.1 (c) (4), the base offense level is 32.   Given Ryan's acceptance of responsibility, the offense is reduced three levels thereby giving him a total offense level of 29.   Ryan is in Criminal History Category II. **This yields a recommended guideline range of 97 to 121 months.**

### C.   THE OFFENSE CONDUCT

Ryan cannot justify his actions and he does not seek to do so. He accepts full responsibility for his commission of the crimes to which he pleaded guilty and is very remorseful in having committed them.

There is no question that what he did was wrong but fortunately there is no monetary loss and no violence.   For approximately one and one-half years, commencing in the summer of 2008, Ryan was involved with assisting an old college buddy by "babysitting" a stash house where marijuana was being packaged and shipped to New York.   In addition, as part of

the conspiracy, he created fraudulent drivers' licenses that were used by co-conspirators to

acquire mailboxes for the transport of money to pay for marijuana. For this, he is truly sorry.

Ryan has remained in custody since his arrest in May of 2010.





[REDACTED]

[REDACTED]

[REDACTED]

## Prison Conditions

Ryan respectfully requests that the Court take into consideration his 29 month incarceration at the MCC-Manhattan. His prolonged confinement at this institution without being allowed outside the prison for any type of recreation, and the lack of visitation due to his being incarcerated so far from his family and his home, warrants the Court's consideration. In the last 29 months he has not seen his parents and has had only one family visit from his brother who lives in Seattle. We submit that these considerations weigh in favor of imposing a sentence of time served on Ryan.

## D.      RYAN'S HISTORY AND CHARACTERISTICS

Ryan Leake was born on October 20, 1979 to Sandra (nee Black) and Gary Leake. He has one sibling, an older brother, Nathan, who is a 33 year old nurse in Seattle, Washington. Ryan has always enjoyed a good relationship with his family. His parents own a woodworking business in Coupeville, Washington. They are hard-working individuals who raised their sons in a loving, middle-class family. They have been extremely supportive of Ryan throughout this ordeal and, indeed, have encouraged Ryan to return home and live with them while he tries to rebuild his life after incarceration. Their letter to the Court tries to enlighten Your Honor about the person their son is and his accomplishments as well as his mistakes. They write:

> ...Ryan was active in the Boy Scouts since age 6 and stayed
> actively involved with it until he turned 18. He was awarded

7

> Eagle Scout at 15.  As an extension of his Scouting life, Ryan eventually joined King County Search and Rescue.  After completion of rigorous training, Ryan participated in a number of searches including one that resulted in the retrieval of a deceased hiker.  Through his experiences with both Scouting and with Search and Rescue, Ryan earned the respect and trust of his peers and leaders.

They go on to say:

> We love Ryan and want to be supportive.  When he is released, we will help Ryan pick up his life again and start over but we know it is up to him to decide what he wants out of life….We believe he has learned a valuable lesson and will strive not to make the same mistakes.  We also believe that Ryan should be given the opportunity to regain his self-respect and return to being a valuable member of our society.

Sandra and Gary Leake's letter is annexed hereto as Exhibit "A," at pp. 1-2.

We received numerous letters from friends and family on behalf of Ryan. We reviewed each and every letter and they all describe the same young man, a young man who put every ounce of energy into helping his community. After carefully sifting through the letters, we have selected those we believe are most telling and provide for the Court a window into who Ryan really is. From these letters, we have extracted various excerpts that provide an accurate cross-section of the content within all the letters we received. Unfortunately, when facing a criminal sentencing proceeding, a defendant's criminal conduct undoubtedly overshadows their otherwise virtuous characteristics. That notwithstanding, we submit that Ryan's virtuous characteristics warrant leniency at sentencing.

His older brother, Nathan, a nurse, has been Ryan's only visitor since his incarceration almost two and one-half years ago.  Nathan made one visit in January of this past year. He and Ryan, being only 13 months apart, are not only brothers, but best friends.

8

Nathan has written to Your Honor to give you some insight on the special bond they share.

He writes:

> ....Ryan has always been a devoted and loyal brother. Wherever we went, whatever we did, it was understood that we were a team and we would always stand up for each other...Ryan has always been a genuinely caring person who believes in the good nature of people and is willing to help out a friend or family member...I can remember during college Ryan always had friends over and would be helping them out with random projects. If a friend needed a place to stay, he would make room. If they needed someone to talk with, he would listen. If they needed advice on relationships or life, he was there.

With regard to Ryan's criminal behavior, Nathan Leake writes:

> ....Ryan's recent behavior is an aberration to the kind of life that he is fully capable of living. His poor decision making started soon after he moved to Los Angeles and became involved with negative influences....He has repeatedly indicated that he is ready to convert back to a healthy and lawful life...Ryan has been involved in formulating a plan for getting him back on track to becoming a productive member of society...Throughout our lives together I have seen what Ryan is capable of and know that he is able to reach that potential again when given the chance.

Nathan Leake's letter is annexed hereto as Exhibit "A," at pp. 3-5.

Ryan graduated high school with a 3.8 GPA. While in high school, he was not only an honor student, but was a member of the hiking club, a computer network administrator and the autoshop teacher's assistant. One of Ryan's long-time friends, Travis Confer, now an accountant in Seattle, Washington, has written to Your Honor about the friend that he attended high school and college with and who was a fraternity brother and a roommate for years after college. Travis writes:

> ....I'm told that Ryan is extremely remorseful and embarrassed about what he has done. I'm sure you have

> heard this many times, but I honestly believe that Ryan lost
> his way when he got mixed up with the wrong crowd
> sometime after college.   Ryan is a very intelligent
> person...Ryan has always had a great work ethic, and I think
> he would make an excellent mechanic or construction worker.
> Ryan has always been a "give you the shirt off of his back"
> kind of guy.  Any help that I needed, he would take the time
> out of his day to assist me.

Travis Confer also tells the court that his family and friends will be waiting to help him out

when he gets home.  He writes:

> It's my understanding that Ryan plans on moving back to the
> Seattle area once he is released.  He will have a great support
> system of both friends and family in the area, which will
> provide positive influences on his life going forward.

Travis Confer's letter is annexed hereto as Exhibit "A," at p. 6.

Ryan completed the entire scouting program beginning with Tiger Cubs at an early

age and receiving the Eagle Scout Award which is the highest rank available, by the age of

16.  He was one of the youngest individuals in Washington State to do so.  A copy of his

Eagle Scout certificate is annexed hereto as Exhibit "B."  As a Scout, Ryan was involved in

any number of projects to benefit the community.  He restored a nature trail at Seahurst Park

in Seattle which included building a bridge over an area which was washed away by nature.

On another occasion he participated in hauling and stacking sandbags in a small town that

was flooded during a harsh storm.

Ryan was an active member of volunteer King County Explorer Search and Rescue

for 3 years after Boy Scouts.  He participated in many search and rescue missions where his

contribution lead to the safe recovery of lost and injured hikers all over Washington State.

As a volunteer, in addition to looking for lost and injured hikers, he helped the police

department find case evidence at crime scenes and even recovered a dead body from Snoqualmie Falls.

Robert W. Boyd, a retired Director of Training King County Search & Rescue, has written to Your Honor about Ryan Leake, the Scout. He writes:

> ….Ryan was a well-mannered, good kid from a nice home. As a Scout, I could always depend upon him to get along well with other Scouts and adults, did what he was asked to do and never got in trouble…Ryan was an unpaid volunteer in our Search & Rescue organization from 1994 to 1997. He participated in 8 to 10 missions per year for four years, such as giving aid to lost children, finding lost Alzheimer's patients, injured hikers, climbers, and suicide jumpers. It was truly Public Service.

He goes on to tell the Court about specific missions wherein both worked together as a team:

> ….Some of the specific missions that I worked with him on: Green River Killer, serial killer of women in the Seattle area, finding evidence and body parts; Sunday Lake / River, search and body recovery of drowning victim; Snoqualmie Falls, body recovery of suicide victim who jumped; Alzheimer's walk away in White Center where we were searching door to door at 2 AM.

He ends his letter to the Court with the following sentiment:

> ….Ryan was an asset to the community of Seattle. I believe he is capable of becoming an asset again.

Robert W. Boyd's letter is annexed hereto as Exhibit "A," at p. 7.

These sentiments are shared Ryan's former Scout Master, Richard Guthrie. He writes:

> ….I came to know Ryan Leake as a capable and helpful young man…He completed an arduous training program to become a team member of Search and Rescue. He was on several missions usually at night in the rain…I believe he can be useful member of society in the future.

11

Richard Guthrie's letter is annexed hereto as Exhibit "A," at pp. 8-9.

The individual that now comes before Your Honor to be sentenced is a man with an enormous support group of not only his immediate family, but of friends and community members. We have annexed hereto, collectively as Exhibit "C," several other letters from family and friends written to the Court to assist Your Honor in fashioning an appropriate sentence.   The young man described in the character letters is dedicated to his family, a loving individual who accepts everyone with open arms and is always ready to lend a helping hand whenever and wherever needed. He is a young man who is genuinely good, who sought to help his family and community and did so each and every day - proudly, and without hesitation – as an Eagle Scout.

While incarcerated, Mr. Ryan chose to use his time productively.  Not only did he teach a GED class to fellow prisoners, but he completed the following courses for which he received certificates of Achievement:  Non-residential Drug Treatment Program, Positive Life-Style Program and Drug Abuse Education Course.  Those certificates are collectively annexed hereto as Exhibit "D."

The sentencing guidelines before this Court are the proverbial barometer used to decide where within or without those guidelines the Court would like to sentence a defendant. Those guidelines are just advisory as the Supreme Court has held in *United States v. Booker*, 543 U.S. 220 (2005), rightfully so because those guidelines do not account for the otherwise patriotic acts that Ryan has embarked upon all the years he served as an Eagle Scout and Search and Rescue volunteer. Listed above is just a sampling of some of the deeds that make Ryan rise above the average young man. Putting himself in harms way for the

12

betterment of his neighbors and the members of the community in Seattle, Washington, showing his compassion and dedication to people in general.

Ryan has done many benevolent acts of kindness over the years. He is someone who goes out of his way to help others.   These letters show a genuine concern for this man from many family members and friends as well as members of the community who have known Ryan for many years. They evidence the young man that has always been there for them in their time of need. They speak of an individual who selflessly gives from the heart.


## CONCLUSION

For all the foregoing reasons, we respectfully request that the Court exercise its discretion to impose upon Ryan Leake a sentence of time served. He now finds himself disgraced and shamed as a result of his misdeeds. He has lost two and one-half years of his life. In light of all the factors above, we respectfully request that the Court show compassion in sentencing and impose a non-guidelines sentence of time served which we believe is a fair and just sentence in this case.

Dated:     New York, New York
           October 19, 2012

                                   Respectfully submitted,

                                   RONALD P. FISCHETTI
                                   Attorney for Defendant
                                   Ryan Leake

13